UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

SHANNON G.,

                Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.

Case No. C22-5372 JHC

**ORDER AFFIRMING AND DISMISSING THE CASE**

    Plaintiff seeks review of the denial of her application for Supplemental Security Income. Plaintiff contends the Administrative Law Judge (ALJ) erred by failing to properly evaluate her symptom testimony and the medical opinion evidence. Dkt. 12. As discussed below, the Court **AFFIRMS** the Commissioner's final decision and **DISMISSES** the case with prejudice.

## I.
### Background

    Plaintiff is 48 years old, has at least a high school education, and has no relevant past work. Admin. Record (AR) 22. On February 15, 2019, Plaintiff applied for benefits, alleging disability as of January 1, 2009. AR 15, 79, 91. Plaintiff's application was denied initially and on reconsideration. AR 15, 88, 100. After the ALJ conducted a hearing on April 6, 2021, the ALJ issued a decision finding Plaintiff not disabled. AR 12–77.

ORDER AFFIRMING AND DISMISSING
THE CASE - 1

## II.
## THE ALJ'S DECISION

Using the five-step disability evaluation process,[1] the ALJ found:

**Step one:** Plaintiff has not engaged in substantial gainful activity since February 15, 2019, the application date.

**Step two:** Plaintiff has the following severe impairments: attention deficit hyperactivity disorder (ADHD); posttraumatic stress disorder (PTSD); major depressive disorder; and generalized anxiety disorder.

**Step three:** These impairments do not meet or equal the requirements of a listed impairment.[2]

**Residual Functional Capacity:** Plaintiff can perform less than the full range of medium work as defined in 20 C.F.R. § 416.967(c).

**Step four:** Plaintiff has no past relevant work.

**Step five:** As there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, Plaintiff is not disabled.

AR 17–23. The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1–6.[3]

## III.
## DISCUSSION

The Court may reverse the ALJ's decision only if it is legally erroneous or not supported by substantial evidence of record. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The Court must examine the record but cannot reweigh the evidence or substitute its judgment for the ALJ's. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). When evidence is susceptible to more than one interpretation, the Court must uphold the ALJ's interpretation if rational. *Ford*, 950 F.3d at 1154. Also, the Court "may not reverse an ALJ's decision on account of an error

---

[1] 20 C.F.R. § 416.920.
[2] 20 C.F.R. Part 404, Subpart P, Appendix 1.
[3] The rest of the procedural history is irrelevant to the outcome of the case and is thus omitted.

ORDER AFFIRMING AND DISMISSING
THE CASE - 2

that is harmless." *Molina v. Astrue*, 674 F.3d 1104, 1111 (9th Cir. 2012).

      A.      Plaintiff's Testimony

Plaintiff contends the ALJ erred in evaluating her symptom testimony. Dkt. 12 at 2–6.

At the hearing before the ALJ, Plaintiff testified she cannot work because of mental health impairments, including PTSD, ADHD, and anxiety. AR 43. Plaintiff testified she lives by herself, she goes to the foodbanks "a lot," and goes shopping once a month. AR 46. She stated she mostly stays at home, and that except for going on walks with her neighbor, she does not go out much because she does not like being around others. AR 46–47. Plaintiff testified she takes medication for her mental health impairments, but they are not always effective, as she experiences periods of severe anxiety and panic attacks that can last several days to a week. AR 48–54. Plaintiff testified that when her anxiety worsens, she lays in bed, she cannot go outside to shop for groceries, attend her appointments, go on walks, complete her daily chores, or be around others. AR 55–59.

Where, as here, an ALJ determines a claimant has presented objective medical evidence establishing underlying impairments that could cause the symptoms alleged, and there is no affirmative evidence of malingering, the ALJ can only discount the claimant's testimony about symptom severity by providing "specific, clear, and convincing" reasons supported by substantial evidence. *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017).

In this case, the ALJ first rejected Plaintiff's testimony because of her limited work history. AR 20. A claimant's extremely poor work history can be a clear and convincing reason an ALJ can give in rejecting a claimant's testimony, as a claimant who has "shown little propensity to work in her lifetime" can hurt her credibility as to her inability to work. *See Thomas*, 278 F.3d at 959. Plaintiff's earnings record from 1990 to 2021 is sparse, with her most

recent work taking place in 2007 when she was employed as a caretaker for three months and an assistant manager for her sister-in-law's construction company. AR 37–41, 185–89. While Plaintiff's work history is not extensive, the Court cannot say it suggests her "little propensity" to work, especially considering Plaintiff could not work in 2008 because she was in prison, and that as recently as October 2019, she worked as a home caretaker in exchange for housing. AR 42, 639. Thus, the Court cannot say the ALJ reasonably rejected her testimony based on her poor work history.

The ALJ also rejected Plaintiff's testimony because it was inconsistent with her activities of daily living. AR 20–21. An ALJ may discount a claimant's symptom testimony when it conflicts with the claimant's general activity level. *See Molina*, 674 F.3d at 1112–13; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1040 (9th Cir. 2007). Here, in rejecting Plaintiff's statements, the ALJ cited Plaintiff's ability to go on walks with her neighbor, go shopping with her cousin, go to the mall and restaurants with her children, live by herself, and take public transportation. AR 20–21. The Court finds the ALJ's reasoning with regards to most of the activities identified by the ALJ unpersuasive, as Plaintiff did not testify to being unable to perform them—during the hearing, she explained that she was prevented from doing them when her symptoms increase in severity. AR 55–57. Thus, the Court cannot say the ALJ reasonably rejected Plaintiff's testimony based on her activities of daily living.

Finally, the ALJ rejected Plaintiff's testimony because of its inconsistency with the objective medical evidence. AR 20–21. An ALJ may reject a claimant's symptom testimony when it is contradicted by the medical evidence. *See Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) (citing *Johnson v. Shalala,* 60 F.3d 1428, 1434 (9th Cir.1995)). Here, the ALJ cited treatment notes which show Plaintiff repeatedly reported

improvement of her symptoms because of her medications. *See* AR 446 ("She states [her medications] are working well for her), 454, 637 ("Patient … states that her medication … helps her focus, and also able to finish things that she does"), 639 ("She says that her mood has been ok lately and he finds that the medication is working well. She feels good at this time."), 641, 644 ("She says both medications are working very well for her."). The record also shows that when under medication, Plaintiff was able to work as a home caretaker and clean and cook throughout the day. *See* AR 639. Plaintiff argues the ALJ's citation were selective, as her overall record indicates her symptoms waxed and waned and her improvement was not long term. *See* Dkt. 12 at 5; Dkt. 14 at 4. Yet the evidence Plaintiff cited mostly supports the ALJ's finding. They show that Plaintiff reported she is "happy with her care," her medication helps her anxiety, she had not had panic attacks in months, she is "happy with much of her life in terms of housing and relationship with her children," and she does not remember bad dreams and nightmares when under medication. *See* AR 600, 613, 615. Plaintiff also attributed increase of her symptoms to COVID-19, because she was "'running out of medication,'" or to other external stressors, such as her ex-husband. *See* AR 594, 600, 606–07, 613, 620. In sum, the ALJ's assessment of Plaintiff's record is supported by substantial evidence. Thus, in rejecting Plaintiff's testimony based on its inconsistency with objective medical evidence, the ALJ did not err.

Although the ALJ's first two reasons for rejecting Plaintiff's testimony were erroneous, Plaintiff has failed to show the ALJ committed harmful error. *See Ludwig v. Astrue*, 681 F.3d 1047, 1054 (9th Cir. 2012) (holding that the party challenging an administrative decision bears the burden of proving harmful error) (citing *Shinseki v. Sanders*, 556 U.S. 396, 407–09 (2009)). An error is harmless "where it is 'inconsequential to the ultimate nondisability determination.'"

*Molina*, 674 F.3d at 1115 (quoting *Carmickle*, 533 F.3d at 1162).  As the ALJ gave at least one valid reason for rejecting Plaintiff's testimony, his inclusion of erroneous reasons was inconsequential and therefore harmless.  *See id.* (quoting *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2004)).

### B. Medical Opinion Evidence

Plaintiff contends the ALJ erred in evaluating the medical opinion evidence provided by (1) Dr. Stamschror, (2) Dr. McCaw, and (3) Mr. Cirilo Adao, PA-C.  Dkt. 12 at 6–9.

Plaintiff submitted her applications after March 27, 2017.  AR 15, 79, 91.  Under the applicable regulations, ALJs must consider every medical opinion in the record and evaluate each opinion's persuasiveness, using five factors (supportability, consistency, relationship with claimant, specialization, and other), with supportability and consistency being the two most important factors.  *Woods v. Kijakazi*, 32 F.4th 785, 791 (9th Cir. 2022); 20 C.F.R. § 416.920c(a).  Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant ... objective medical evidence."  20 C.F.R. § 416.920c(c)(1).  Consistency means the extent to which a medical opinion is "consistent ... with the evidence from other medical sources and nonmedical sources in the claim."  20 C.F.R. § 416.920c(c)(2), § 404.1520c(c)(2).  "An ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence."  *Woods*, 32 F.4th at 792.

#### 1. Dr. McCaw

In January 2020, Dr. W. Kefron McCaw completed a mental evaluation of Plaintiff by conducting a mental status examination and reviewing notes from Plaintiff's social worker.  AR 563–68.  Dr. McCaw diagnosed her with PTSD "with panic attacks"; "Opioid use disorder, mild

to moderate, in reported sustained remission"; and "R/O [rule out] ADHD." AR 565. Based on Plaintiff's impairments, Dr. McCaw opined that Plaintiff would be markedly limited in: performing activities within a schedule, maintaining regular attendance, and being punctual within customary tolerances without special supervision; communicating and performing effectively in a work setting; maintaining appropriate behavior in a work setting; and completing a normal work day and work week without interruptions from psychologically based symptoms. AR 565–66.

The ALJ first rejected Dr. McCaw's opinion because it was "based on only one examination." AR 21. Under the new regulations, the frequency of a claimant's visits with a medical source is a factor the ALJ can consider, as it "demonstrate[s] whether the medical source has a longitudinal record understanding of [the claimant's] impairment[s]." *See* 20 C.F.R. § 416.920c(c)(3)(ii). But it is neither the sole nor determinative factor. The regulations make it clear that a medical opinion's supportability and consistency are the most important factors considered by the ALJ when considering medical opinions. *See* 20 C.F.R. § 416.920c(b)(1). Thus, that Dr. McCaw has only evaluated Plaintiff once is not by itself a valid reason the ALJ can use to reject the doctor's opinion.

The ALJ also rejected Dr. McCaw's opinion for its inconsistency with the longitudinal record, finding that Plaintiff's record "suggest[ed] improvements in mental health symptoms" due to her medication. *See* AR 21. An ALJ may reasonably reject a doctor's opinions when they conflict with or are contradicted by the medical evidence. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (holding that a treating physician's opinion may properly be rejected where it is contradicted by other medical evidence in the record). In this case, the ALJ's assessment of Plaintiff's record is substantially supported. The treatment notes

the ALJ identified include Plaintiff's own reports that she is doing well under her ADHD medication and that she can better focus and concentrate. *See* AR 647, 652, 660, 666. Plaintiff also reported that, because of her medication, she has not been in a depressed mood, and that she "no longer experiences excessive nervousness, fear, apprehension, and worry" when she complies with her anxiety medication. AR 669. Given that these findings negate Dr. McCaw's opinion about the effects of Plaintiff's mental impairments, the ALJ could reasonably find Dr. McCaw's opinion lacking in persuasiveness. Thus, in rejecting Dr. McCaw's opinion with its inconsistency with the longitudinal record, the ALJ did not err.

As the ALJ has given at least one valid reason, supported by substantial evidence, to reject Dr. McCaw's opinion, the Court need not further assess the other reasons offered by the ALJ. Even if the ALJ committed error on those grounds, those errors would be harmless. *See Carmickle*, 533 F.3d at 1162-1163 (inclusion of erroneous reasons is harmless).

### 2. Dr. Stamschror

Dr. Justin Stamschror completed a psychiatric evaluation in May 2019 by conducting a mental status exam and reviewing Plaintiff's medical records. AR 433–37. Based on Plaintiff's performance on her exam, Dr. Stamschror opined that Plaintiff's ability to perform simple and repetitive tasks is adequate, her ability to perform detailed and complex tasks is "somewhat impaired," and her ability to perform work activities on a consistent basis without special or additional instructions is "also somewhat impaired." AR 437. He also opined that Plaintiff's ability to perform work activities at an adequate pace, maintain regular attendance in the workplace and complete a normal workday, and ability to interact with coworkers and adapt to workplace stressors is "likely poor." *See id*.

The ALJ found the portion of Dr. Stamschror's opinion about Plaintiff's ability to

perform simple tasks supported by the evidence, but rejected the rest because of its inconsistency with Plaintiff's record showing improvement from medication. *See* AR 20. As stated, an ALJ may reasonably reject a doctor's opinions when they conflict with or contradicted by the medical evidence. *See Batson*, 359 F.3d at 1195. Here, the ALJ cited several times when Plaintiff herself found her ADHD medication effective in helping her focus and finish tasks, that hat her mood has been "ok lately," that she "feels good," that her PTSD medication has been working well, that her anxiety is better, that she is sleeping better, and that she "is happy with her current regimen." *See* AR 637, 639, 641, 644. The record does show Plaintiff experienced increased anxiety and stress, but the ALJ properly pointed out that the record also shows this was caused by external stressors, namely her familial issues. *See* AR 579, 609. The ALJ also properly pointed out her records show she can live with others, she believes she gets along with others, and she endorsed positive relationships with the couple she was living with, her close friends and neighbors, though she herself seldom socializes. AR 578–81, 588. Based on Plaintiff's own reports of improvement and ability to form positive relationships with others, and given that the record shows the worsening of Plaintiff's symptoms is due to external stressors, the ALJ could reasonably find Dr. Stamschror's opinion lacking in persuasiveness. Thus, in rejecting his opinion because of its inconsistency with the longitudinal record, the ALJ did not err.

        3.     Cirilo Adao, PA-C

Mr. Adao, one of Plaintiff's treating sources, completed a mental residual functional capacity assessment prepared by Plaintiff's counsel in March 2021. AR 684–87. Mr. Adao indicated Plaintiff was markedly limited in her ability to: carry out very short and simple instructions, carry out detailed instructions, interact appropriately with the public, accept instructions and respond appropriately to criticisms from supervisors, and responding changes in

the work setting. AR 685–87.  When asked how often Plaintiff would need to miss work each month because of her mental impairments, Mr. Adao wrote one to two days per month.  AR 687.  Finally, when asked if Plaintiff's impairments would substantially interfere with her ability to work at least 20 percent of the time, Dr. Adao said, "[Y]es." *Id*.

The ALJ rejected Mr. Adao's opinion because of its general inconsistency with "the longitudinal record showing that [Plaintiff] had good results with her mental health medication, including improved focus and concentration." *See* AR 22.  As stated above, an ALJ may reasonably reject a medical opinion when it conflicts with or contradicted by the medical evidence. *See Batson*, 359 F.3d at 1195.  Further, as discussed above, Plaintiff's record shows she repeatedly reported improvement of her mental health symptoms because of her medications, and that she reported forming positive relationships and even live with others.  *See* AR 578–81, 588, 637, 639, 641, 644, 647, 652, 660, 666.  As these records largely undermine Mr. Adao's opinion, the Court cannot say the ALJ unreasonably rejected Mr. Adao's opinion for its inconsistency with the medical record.  Accordingly, the Court finds the ALJ did not err.

## IV.
### Conclusion

For the foregoing reasons, the Commissioner's final decision is **AFFIRMED** and this case is **DISMISSED** with prejudice.

DATED this 18th day of November, 2022.

John H. Chun
United States District Judge

ORDER AFFIRMING AND DISMISSING
THE CASE - 10